UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

MARIA AZUCENA YANNES,

Plaintiff,

-against-

EL PATRON MINIMARKET CORP. and CARLOS A. VINANZACA,

Defendants.

-------------------------------------------------------- x

REPORT AND RECOMMENDATION

24-CV-8253 (NCM)(MMH)

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Maria Azucena Yannes sued Defendants El Patron Minimarket Corp. ("El Patron") and Carlos A. Vinanzaca, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("the FLSA") and the New York Labor Law, N.Y. Lab. Law §§ 190 and 650 *et seq.* (the "NYLL"). (*See generally* Am. Compl., ECF No. 19.)[1] Before the Court is Plaintiff's second motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b). (*See generally* Mot., ECF No. 29.) The Honorable Natasha C. Merle referred the motion for report and recommendation. For the reasons set forth below, the Court respectfully recommends that Plaintiff's second motion for default judgment should be **granted in part** as follows: (1) a default judgment should be entered against Defendants and (2) Plaintiff should be awarded damages as set forth herein.

[1] All citations to documents filed on ECF are to the ECF document number (i.e., "ECF No. ___") and pagination "___ of ___" in the ECF header unless otherwise noted.

# I. BACKGROUND

## A. Factual Allegations

The following facts are taken from the Amended Complaint and are assumed to be true for the purposes of this motion. *Bricklayers & Allied Craftworkers Loc. 2* v. *Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

At all relevant times, El Patron was a New York corporation with its principal place of business at 3205 Junction Boulevard, Flushing, New York. (Am. Compl., ECF No. 19 ¶ 4.)[2] Defendants owned and operated a store doing business as El Patron Mini Market at the same location. (*Id.* ¶ 14.) Vinanzaca was the manager of El Patron and had the ability to hire and fire employees, set wages and work schedules, and maintain the records. (*Id.* ¶ 8). Vinanzaca also supervised, scheduled, and paid Plaintiff during her employment at El Patron. (*Id.* ¶ 9).

Plaintiff worked at El Patron Mini Market from July 23, 2023, to September 14, 2024; her duties included stocking merchandise such as fruits and vegetables and moving boxes of fruit, vegetables, fish, and meat to the store's entrance. (*See id.* ¶ 15). From July 2023 to November 2023, Plaintiff worked six days per week, Tuesday through Sunday, from 2:00 p.m. until 10:00 p.m. (*Id.* ¶ 18.) During this time, Plaintiff typically worked 48 hours per week, except when she worked an extended shift twice monthly on Mondays and thus worked 62 hours per week.[3] (*Id.* ¶¶ 19–20.) From November 2023 to February 15, 2024, Plaintiff only

[2] The Amended Complaint inexplicably restarts its numbered paragraphs after paragraph 43. (*See* Am. Compl., ECF No. 19 at 10 (restarting at paragraph 41) and 12 (restarting again at paragraph 44).) To avoid confusion, the Court will include page and paragraph citations for all paragraphs numbered higher than 43.

[3] Plaintiff's declaration in support of the requested damages states that she worked 56 weekly hours during this period. (*See* Yannes Decl., ECF No. 30-5 ¶ 9; *see also* § VII.B., *infra*.)

worked on weekends, for a total of 20 hours per week. (*Id.* ¶ 21.) From February 15, 2024 to February 20, 2024, Plaintiff worked 40 hours per week. (*Id.* ¶ 22.) From February 21, 2024 to August 1, 2024, Plaintiff worked approximately 60 hours per week as follows: Monday to Friday from 2:00 p.m. until 10:00 p.m. and 10 hours each Saturday and Sunday. (*Id.* ¶¶ 23–24.) From August 1, 2024 to September 14, 2024, the end of her employment, Plaintiff worked approximately 40 hours per week on Monday through Friday from 2:00 p.m. to 10:00 p.m. (*Id.* ¶ 24.) Throughout her employment at El Patron Mini Market, Vinanzaca paid Plaintiff $650.00 in cash per week when she worked six days per week. (*Id.* ¶ 25.) For the weeks when Plaintiff worked seven days per week, she was paid $700.00 in cash per week. (*Id.* ¶ 26.)

Plaintiff alleges that Defendants did not pay her the required minimum wage and overtime wages for hours worked in excess of 40 hours per week and spread of hours pay for days on which she worked more than 10 hours. (*See id.* ¶¶ 27–28, 30, 32, 38–43; *id.* at 10–12 ¶¶ 41–50; *id.* at 12–13 ¶¶ 44–48.) Plaintiff further alleges that Defendants did not provide wage notices and statements and that this failure caused her concrete harm. (*See id.* at 13 ¶¶ 49–54.)

**B. Procedural History**

Plaintiff initiated this action on November 27, 2024 against El Patron and an individual named "Carlos Vinanza." (*See generally* Compl., ECF No. 1.) Plaintiff served the summons and Complaint on El Patron and Vinanza on January 23, 2025. (ECF Nos. 7, 8.) At Plaintiff's request, after these Defendants failed to answer or otherwise respond to the Complaint, the Clerk of the Court entered a notation of default against them on February 19, 2025. (ECF No. 11.)

Plaintiff filed the first motion for default judgment on April 21, 2025. (ECF No. 12.) On June 17, 2025, the Court ordered Plaintiff to show cause as to why the motion should not be denied due to several deficiencies including, *inter alia*, improper service of the summons and Complaint on El Patron and failure to comply with Local Civil Rule 55.2. (*See* June 17, 2025 Order to Show Cause.) On July 1, 2025, Plaintiff withdrew the motion. (ECF No. 17.) On August 14, 2025, the Court granted Plaintiff leave to amend the Complaint to correct the individual Defendant's name from "Vinanza" to "Vinanzaca." (*See* ECF No. 18; Aug. 14, 2025 Order.)

On September 4, 2025, Plaintiff filed the Amended Complaint. (*See generally* Am. Compl., ECF No. 19.) Plaintiff served the summons and Amended Complaint on Vinanzaca on September 9, 2025, and on El Patron on September 18, 2025. (ECF Nos. 22–23.) At Plaintiff's request, after Defendants failed to answer or otherwise respond to the Amended Complaint, the Clerk of the Court entered a notation of default against them on October 20, 2025. (ECF No. 27.)

Plaintiff filed the second motion for default judgment on November 14, 2025, seeking unpaid minimum and overtime wages under the FLSA and NYLL, statutory damages for wage statement and wage notice violations under the NYLL, liquidated damages, pre-judgment interest, and attorneys' fees and costs. (*See generally* ECF No. 29.) Judge Merle referred the motion for report and recommendation. (Nov. 17, 2025 Order Ref. Mot.) The Court held a hearing on the motion on January 29, 2026, and reserved decision; Defendants did not appear or otherwise contact the Court or Plaintiff. (*See* Jan. 29, 2026 Min. Entry; *see generally* Jan. 29, 2026 Transcript ("Tr."), ECF No. 36.) At the Court's request, Plaintiff supplemented the motion on February 9, 2026. (Supp. Ltr., ECF No. 37.)

## II. STANDARD FOR DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment. *See* Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y. Mar. 9, 2021). *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default. Fed. R. Civ. P. 55(a). If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment. Fed. R. Civ. P. 55(b)(1). *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzales v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021). To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up). The Court must draw all reasonable inferences in favor of the movant. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "[a] default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

## III. <u>JURISDICTION AND VENUE</u>

### A. Subject Matter Jurisdiction

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action." *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-150 (ALC), 2021 WL 4427016, at *3 (S.D.N.Y. Sep. 27, 2021) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125–27 (2d Cir. 2011)). The Court has original jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. 216(b). *See* 28 U.S.C. § 1331. The Court may also exercise supplemental jurisdiction over Plaintiff's NYLL claims because they arise out of the same facts and circumstances as the FLSA claims. 28 U.S.C. § 1367(a); *McLaughlin v. Onanafe Mgmt. Sols. LLC*, No. 22-CV-6792 (PKC)(MMH), 2024 WL 4184485, at *3 (E.D.N.Y. Sep. 14, 2024), *R. & R. adopted by* 2024 WL 4355488 (E.D.N.Y. Sep. 30, 2024) (cleaned up).

### B. Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[s.]" *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendants must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (subsequent history omitted).

The Court has personal jurisdiction over Defendants. *First*, Plaintiff properly served Vinanzaca by delivering the summons and Amended Complaint to a person of suitable age

and discretion at Vinanzaca's actual place of business and by mailing a copy of same to Vinanzaca's actual place of business. (*See* ECF No. 22.) This service method follows federal and state rules for service on individuals. Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2). *Secondly*, Plaintiff properly served El Patron by delivering a copy of the summons and Amended Complaint to the New York Secretary of State. (*See* ECF No. 23.) This method of service on corporations complies with federal and state procedural rules. Fed. R. Civ. P. 4(h)(1)(A)–(B); N.Y. Bus. Corp. Law § 306(b)(1).

*Second*, the Court has general jurisdiction over El Patron because it is a "New York corporation[] 'doing business' in New York." *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) and N.Y. C.P.L.R. § 301)), *R. & R. adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018). Though Plaintiff does not allege Vinanzaca's domicile, the Court would have general jurisdiction over him if he was domiciled in New York. *See id.* at *3. If he was not, "a federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under C.P.L.R. § 301, or specific jurisdiction, under C.P.L.R. § 302." *Weitsman v. Levesque*, No. 17-CV-727 (MAD)(DEP), 2019 WL 7503022, at *3 (N.D.N.Y. Jan. 11, 2019) (cleaned up). Vinanzaca conducts business within the state and owns El Patron, (Am. Compl., ECF No. 19 ¶¶ 8, 14), which sufficiently establishes specific jurisdiction. *Weitsman*, 2019 WL 7503022, at *3.

*Third*, "[s]ince jurisdiction is proper for all Defendants under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process." *Francis*, 2018 WL 4292171, at *3. Each defendant therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal

jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

Accordingly, the Court has personal jurisdiction over both Defendants.

### C. Venue

"A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2). Venue is proper in this district because the failure to pay wages alleged in the Amended Complaint occurred during Plaintiff's employment in Flushing, New York. (Am. Compl., ECF No. 19 ¶¶ 13–15, 25–37.)

## IV. PROCEDURAL COMPLIANCE

Plaintiff demonstrates substantial compliance with the Local Civil Rules' requirements for default judgment motions. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 n.2 (2d Cir. 2006) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local rules.") (cleaned up).

Plaintiff includes a notice of motion (ECF No. 29); a memorandum of law in support of the motion (ECF No. 31); an affidavit with exhibits (ECF No. 30) showing, *inter alia*, that the Clerk has entered default against Defendants (ECF No. 30-4); a proposed judgment (ECF No. 31-1); a statement of damages showing the proposed damages and basis for each element of damages (ECF No. 30-6); and a certificate of service stating that all documents in support of the request for default judgment have been mailed to Vinanzaca at his last known residential address and El Patron at its last known business addresses (ECF No 32). *See* Loc. Civ. Rs. 7.1(a)(1), 55(a)(1)(A), 55(a)(2)–(3), 55(c); *see also Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD)(PK), 2022 WL 1018791, at *4 (E.D.N.Y. Mar. 16, 2022)

(listing similar submissions as compliant with the Local Civil Rules), *R. & R. adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022). Accordingly, Plaintiff has complied with this district's Local Civil Rules.

Plaintiff also complies with the Servicemembers Civil Relief Act ("SCRA"), which requires, "[i]n a default judgment action, a plaintiff . . . to file an affidavit that states whether the defendant is serving in the military and must show necessary facts in support of the affidavit." *Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA)(RER), 2022 WL 18809176, at *5 (E.D.N.Y. Dec. 16, 2022), *R. & R. adopted by* 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) (citing 50 U.S.C. § 3931(b)(1)); *see also* Loc. Civ. R. 55.2(a)(1)(B). "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default [judgment] is to be entered." *Tenemaza v. Eagle Masonry Corp.*, No. 20-CV-452 (AMD)(VMS), 2021 WL 8317120, at *5 (E.D.N.Y. July 22, 2021) (citing *Pruco Life Ins. Co. of N.J. v. Est. of Locker*, No. 12-CV-882 (ENV)(RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012)); *see also Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 375647, at *4 (E.D.N.Y. Jan. 3, 2023), *R. & R. adopted by* 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023). Plaintiff submitted a status report from the U.S. Department of Defense Manpower Data Center confirming that Vinanzaca is not in the military. (*See* ECF No. 30-8 (SCRA Search).) Accordingly, the Court finds that Plaintiff has complied with the SCRA.

## V. <u>DEFAULT JUDGMENT FACTORS</u>

"Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment." *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502

(PKC)(MMH), 2025 WL 832730, at *5 (E.D.N.Y. Mar. 18, 2025) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)), *R. & R. adopted by* Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Mar. 31, 2025), *as amended by* Am. Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Apr. 9, 2025). Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiff's favor. *First*, Defendants' "non-appearance and failure to respond to the Complaint or otherwise appear indicate willful conduct." *See Tambriz v. Taste & Sabor, LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021). *Second*, without an answer to the Amended Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *R. & R. adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021). *Third*, Plaintiff will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court." *Vazquez Romero v. La Morenita Fruit Mkt. Corp*, No. 23-CV-6300 (OEM)(MMH), 2026 WL 687228, at *6 (E.D.N.Y. Mar. 11, 2026), *R. & R. adopted by* Order Adopting R. & R., *Vazquez Romero v. La Morenita Fruit Mkt. Corp*, No. 23-CV-6300 (OEM)(MMH) (E.D.N.Y. Mar. 31, 2026).

Based on the foregoing, entry of default judgment against Defendants is permissible.

## VI. LIABILITY

### A. Statute of Limitations

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *5 (E.D.N.Y. Sep. 29, 2023), *R. & R. adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (E.D.N.Y. Nov. 30, 2023). In contrast, the NYLL establishes a six-year limitations period for wage claims. N.Y. Lab. Law §§ 198(3), 663(3). "The statute of limitations begins to run when an employee begins to work for the employer." *Esquivel*, 2023 WL 6338666, at *5. Plaintiff began working for Defendants on July 23, 2023 and commenced this action on November 27, 2024. (*See* Am. Compl., ECF No. 19 ¶ 15.) Therefore, considering Defendants' default and the relevant statute of limitations period, Plaintiff may recover under the FLSA and NYLL for any claims that accrued since the start of her employment.

### B. FLSA Coverage

To establish a minimum wage or overtime claim under the FLSA, "plaintiff must prove the following: (1) the defendant is an employer subject to the FLSA; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH), 2024 WL 4271234, at *7 (E.D.N.Y. Sep. 19, 2024), *R. & R. adopted by* Order Adopting R. &

R., *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH) (E.D.N.Y. Dec. 5, 2024); 29 U.S.C. §§ 206(a), 207(a).

**1. Employers Subject to the FLSA**

The Amended Complaint alleges that Defendants were Plaintiff's employers within the meaning of the FLSA. (Am. Compl., ECF No. 19 ¶¶ 15–17.) An employer includes, "any person [*e.g.*, an individual or corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(a), (d). "[F]or employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce." *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sep. 8, 2022), *R. & R. adopted by* Order Adopting R. & R., *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML) (E.D.N.Y. Sep. 23, 2022); 29 U.S.C. §§ 206, 207. These two methods of establishing FLSA coverage are known as "enterprise coverage" and "individual coverage," respectively. *Sanchez v. Ms. Wine Shop*, 643 F. Supp. 3d 355, 367 (E.D.N.Y. 2022).

**a. El Patron**

An employer is an "enterprise engaged in commerce or in the production of goods for commerce" subject to the FLSA when the employer: (1) "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has an "annual gross volume of sales made or business done [] not less than $500,000[.]" 29 U.S.C. § 203(s)(1)(A)(i)–(ii); *Martinez v. Golden Flow Dairy*, No. 21-CV-2421 (ENV)(MMH), 2025 WL 3769328, at *5 (E.D.N.Y. Dec. 31, 2025), *R. & R. adopted by*

Order Adopting R. & R., *Martinez v. Golden Flow Dairy*, No. 21-CV-2421 (ENV)(MMH) (E.D.N.Y. Feb. 11, 2026).

Plaintiff properly pleads enterprise coverage as to El Patron. The Amended Complaint alleges that El Patron engaged in interstate commerce as an employer and/or through the production of goods for commerce within the meaning of the FLSA, and that El Patron "had gross revenues in excess of $500,000.00" and "used goods and materials produced in interstate commerce and has employed at least two individuals who handled such goods and materials." (Am. Compl., ECF No. 19 ¶¶ 5–7.) Plaintiff also asserts that there is an interstate nexus because Defendants' commercial activities center around the stocking of goods and food items that were transported between states. (*See* Tr., ECF No. 36 at 4:22–5:3.) Plaintiff further alleges that the goods she handled for the business daily included many items that were transported between states and that she regularly stocked and placed merchandise—such as "packaged goods," "food items," and "canned items"—that originated outside of New York state. (*Id.* at 4:22–5:1; Mem., ECF No. 31 at 6; Am. Compl., ECF No. 19 ¶ 15.) Plaintiff therefore plausibly alleges specific facts to establish that El Patron's employees handle goods or materials that move "among the several States" and that their business generates sales over the statutory threshold. 29 U.S.C. § 203(b); *see id.* § 203(s)(1)(A); *see also, e.g.*, *Hernandez v. J & M Corona Deli Corp.*, No. 23-CV-9120 (RER)(PK), 2025 WL 2597767, at *5 (E.D.N.Y. Aug. 13, 2025) (finding enterprise coverage test met where plaintiff alleged that the corporate defendant made at least $500,000 in annual revenue and that it purchased all materials, goods, and products from suppliers outside the State of New York), *R. & R. adopted by* 2025 WL 2591538 (E.D.N.Y. Sep. 8, 2025).

Accordingly, Plaintiff adequately alleges that El Patron operates an enterprise engaged in commerce and it is therefore subject to the FLSA.[4]

**b. Vinanzaca**

Plaintiff also sufficiently establishes that Vinanzaca was her employer within the meaning of the FLSA. "The FLSA contemplates that more than one employer may be responsible for violations of the statute." *Echevarria v. ABC Corp.*, No. 21-CV-4959 (JS)(ARL), 2023 WL 5880417, at *4 (E.D.N.Y. Sep. 11, 2023) (citation omitted), *adhered to on reconsideration*, No. 21-CV-4959 (JS)(ARL), 2024 WL 1639934 (E.D.N.Y. Apr. 16, 2024). For individual defendants, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees: 'control over a company's actual operations in a manner that relates to a plaintiff's employment.'" *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)). Courts also consider the "economic reality" of the employment relationship by analyzing "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)); *see also Tapia*, 906 F.3d at 61–62 (applying the *Carter* factors to determine individual liability under the FLSA). "The test looks at the totality of the circumstances, and no individual factor is dispositive." *See Brito v.*

[4] Because the Court finds that Plaintiff satisfies the enterprise coverage standard, it does not address whether Plaintiff also satisfies the individual coverage test.

*Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at *8 (E.D.N.Y. Mar. 24, 2022) (citing *Irizarry*, 722 F.3d at 105).

Plaintiff has shown that Vinanzaca qualifies as an employer under the FLSA because his "role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.3d at 110. Plaintiff alleges that Vinanzaca was an owner or partial owner of El Patron and possessed the managerial authority over employees—including Plaintiff—to set wages and hours, maintain records, and make hiring or termination decisions. (Am. Compl., ECF No. 19 ¶ 8.) Plaintiff further alleges that Vinanzaca had an active role in the daily operations and supervision of employees, including Plaintiff, encompassing payment and wage disbursement responsibilities. (*Id.* ¶ 9.) These allegations are sufficient to establish that Vinanzaca was an individual employer within the meaning of FLSA's provisions and therefore required to comply with the FLSA's overtime and minimum wage provisions. *See Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH), 2024 WL 4309775, at *7 (E.D.N.Y. Sep. 26, 2024) (holding that individual owners and operators of a corporation who set wages and the employer's operational schedule, and hired and fired employees, were "employers" under the FLSA), *R. & R. adopted by* Order Adopting R. & R., *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH) (E.D.N.Y. Jan. 15, 2025).

**c. Joint and Several Liability**

"A plaintiff's allegations that an individual and corporate defendant are part of a common ownership or management of a business, coupled with a defendant's default, are sufficient to allege joint employment." *Escobar v. Mahopac Food Corp.*, No. 19-CV-00510 (FB)(JRC), 2025 WL 934906, at *7 (E.D.N.Y. Mar. 5, 2025) (citing *Choi v. AHC Med. Servs.,*

*PLLC*, No. 22-CV-1450 (MKB)(JRC), 2023 WL 5612394, at *5 (E.D.N.Y. Aug. 1, 2023), *R. & R. adopted by* 2023 WL 5613718 (E.D.N.Y. Aug. 30, 2023) and *Khan v. Nyrene, Inc.*, No. 18-CV-557 (ARR)(ST), 2020 WL 1931282, at *4 (E.D.N.Y. Mar. 11, 2020), *R. & R. adopted by* 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020)), *R. & R. adopted by* 2025 WL 931283 (E.D.N.Y. Mar. 27, 2025). "As the Court has found that [El Patron and Vinanzaca] were jointly [Plaintiff's] employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in [Plaintiff's] favor." *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015) (collecting cases); *see also Brito*, 2022 WL 875099, at *8.

**2. Employee Covered by the FLSA**

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "Two types of employees are covered: (1) 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;' and (2) employees who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR)(RER), 2021 WL 4464121, at *9 (E.D.N.Y. Aug. 20, 2021), *R. & R. adopted by* 2021 WL 4463483 (E.D.N.Y. Sep. 29, 2021) (quoting 29 U.S.C. § 207(a)(1)). The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements. *See* 29 U.S.C. § 213(a) (listing multiple exemptions). Whether a plaintiff-employee's activities fall under such exemptions is a question of law. *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129–30, n.28 (2d Cir. 2020) (citing *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012)).

Plaintiff alleges facts that establish, as a matter of law, that she was engaged in non-exempt employment under the FLSA.[5] Specifically, the Amended Complaint alleges that Plaintiff was employed by Defendants stocking merchandise at El Patron. (Am. Compl., ECF No. 19 ¶ 15.) Employment in positions with similar duties is not exempt from the FLSA. *See, e.g.*, *Vazquez Romero,* 2026 WL 687228, at *7 (finding that plaintiff, a former employee at a market who regularly handled food, was a non-exempt employee under the FLSA). Therefore, the Court does not find any basis for exempting Plaintiff's employment relationship from the FLSA's provisions. Accordingly, Plaintiff qualifies for the protections of the FLSA.

### C. NYLL Coverage

To plead a NYLL claim, a plaintiff "must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to 'any person employed for hire by an employer in any employment.'" *Perry*, 2022 WL 1018791, at *7 (quoting N.Y. Lab. Law § 190). "Under the New York Labor Law, the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Solis*, 2024 WL 4271234, at *8; *see* N.Y. Lab. Law §§ 651(5)–(6). Additionally, "[u]nder the NYLL, an employee-employer relationship is established through [] 'the degree of control exercised by the purported employer over the employee.'" *Brito*, 2022 WL 875099 at *8 (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)). The Court has already

[5] Defendants have not appeared in this case to assert or offer any facts to support a finding that Plaintiff is an exempt employee. *See Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 n.7 (2d Cir. 2013) ("A claim of exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof in making any such claim.") (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) and *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)).

determined that Defendants are Plaintiff's employers within the meaning of the FLSA. (*See* § VI.B.1., *supra*.) "Because the NYLL's definition of 'employer' is coextensive with the FLSA's definition . . . Defendants are [Plaintiff's] employers within the meaning of the NYLL" as well. *Perry*, 2022 WL 1018791, at *7. Therefore, Plaintiff qualifies for the protections of the NYLL.

**D. Statutory Violations**

In the Amended Complaint, Plaintiff alleges that Defendants violated the FLSA and NYLL overtime provisions (Counts 1 and 2), the NYLL minimum wage provisions (Count 3), and the NYLL provisions related to spread of hours (Count 4) and wage statements and notices (Count 5). (*See generally* Am. Compl., ECF No. 19.) However, the motion does not address or seek damages related to spread of hours pay (Count 4). (*See* Mem., ECF No. 31 at 13 (describing total damages); ECF No. 30-6 (Damages Chart omitting spread of hours damages calculations); ECF No. 37 (supplemental letter describing damages categories but not including unpaid spread of hours pay).) Accordingly, this claim is waived. *Esquivel*, 2023 WL 6338666, at *7.

**1. Minimum Wage (Count 3)**

Under the FLSA and NYLL, "[a]n employer may not pay an employee less than the statutory minimum wage for each hour the employee worked in any week." *McLaughlin*, 2024 WL 4184485, at *9 (cleaned up). "An employee bringing an action for unpaid minimum wages under the FLSA and the NYLL has the burden of proving that he performed work for which he was not properly compensated." *Bocon*, 2025 WL 832730, at *8 (quoting *Fermin*, 93 F. Supp. 3d at 41). "A plaintiff may sufficiently establish FLSA or NYLL minimum wage violations through an affidavit or declaration stating the number of hours worked." *Brito*, 2022

WL 875099, at *10. "'If the defendant has defaulted, however, the court may presume that the plaintiff's recollection and estimates of the hours he or she worked are accurate.'" *Tzilin*, 2024 WL 4309775, at *9 (quoting *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 119 (E.D.N.Y. 2023)).

Under New York law, the applicable minimum wage rate is determined by the size and location of the employer and the dates of the plaintiff's employment. N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 142-2.1(a). The Amended Complaint alleges that Plaintiff was employed from July 23, 2023 to September 14, 2024, and that at least two employees worked for Defendants. (*See* Am. Compl., ECF No. 19 ¶¶ 7, 15.) However, because the Amended Complaint does not allege El Patron's or Defendants' exact number of employees during the relevant period, the Court will use the applicable minimum wage rates for small employers. *Accord Ramirez v. Nahid Furniture Inc*, No. 24-CV-4907 (RER)(MMH), 2026 WL 759236, at *8 (E.D.N.Y. Mar. 17, 2026) (applying small-employer minimum wage rate where complaint was silent about the number of defendant's employees), *R. & R. adopted sub nom. Medina Ramirez v. Nahid Furniture Inc*, No. 24-CV-4907 (RER)(MMH), 2026 WL 881371 (E.D.N.Y. Mar. 31, 2026); *Reyes v. Lincoln Deli Grocery Corp.*, No. 17-CV-2732 (KBF), 2018 WL 2722455, at *5 (S.D.N.Y. June 5, 2018) (same); N.Y. Lab. Law § 652(1)(a)(ii); 12 N.Y.C.R.R. § 142-2.1(a)(1)(ii). During the relevant period, small employers were subject to minimum wage rates of $15.00 per hour from January 1, 2023 until December 31, 2023; and $16.00 per hour from January 1, 2024 through December 31, 2024. *See id.*

Next, "for the purposes of determining whether Plaintiff was paid the prevailing minimum wage, the Court must determine [her] regular hourly rate of pay." *Sanchez*, 643 F. Supp. 3d at 371 (cleaned up). Under the NYLL, the regular hourly wage rate for non-

hospitality industry employees like Plaintiff who were paid on a weekly basis "shall be determined by dividing the total hours worked during the week into the employee's total earnings." 12 N.Y.C.R.R. § 142-2.16. Plaintiff alleges that she was paid a weekly salary of either $650.00 or $700.00 from approximately July 2023 through August 2024, for working between 48 and 62 hours per week. (*See* Am. Compl., ECF No. 19 ¶¶ 18–26.) Therefore, Plaintiff's regular hourly pay rate ranged from approximately $13.54 (*i.e.*, $650.00 per week ÷ 48 hours per week) to $11.29 (*i.e.*, $700.00 per week ÷ 62 hours per week), which is less than the applicable NYLL minimum wage rates.[6] Accordingly, the Court respectfully recommends that Defendants should be liable for violations of the NYLL's minimum wage provisions.

### 2. Overtime Wages (Counts 1 & 2)

The FLSA requires that "'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which he is employed.'" *Dejesus*, 726 F.3d at 88 (alterations omitted) (quoting 29 U.S.C. § 207(a)(1)). Under New York law, for non-hospitality workers such as Plaintiff, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate for hours worked in excess of 40 hours in one workweek." 12 N.Y.C.R.R. § 142-2.2. To state a plausible FLSA overtime claim, "plaintiffs must sufficiently allege '40 hours of work in a given workweek as well as

[6] As noted, Plaintiff avers in her declaration that she worked seven days per week for 56 hours per week and was paid $700.00. (*See* Yannes Decl., ECF No. 30-5 ¶¶ 9, 14.) Even if the Court applies 56 hours per week, Plaintiff earned only $12.50 per hour during this period (*i.e.*, $700.00 per week ÷ 56 hours per week), which is still less than the applicable NYLL minimum wage. (*See* § VII.B, *infra*.)

some uncompensated time in excess of the 40 hours.'" *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 115 (2d Cir. 2023) (quoting *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Plaintiff sufficiently establishes that Defendants failed to pay her the requisite overtime pay for certain weeks of her employment. Plaintiff alleges that during certain time periods of her employment she worked over 40 hours a week (ranging from 48 to 62 hours a week) but was never paid an overtime premium of one-and-one half times her regular pay rate for each hour worked in excess of 40 per week. (*See* Am. Compl., ECF No. 19 ¶¶ 20, 23, 27.) The Court therefore respectfully recommends that Defendants should be liable for failure to pay overtime wages under the FLSA and NYLL.

**3. Wage Notices & Wage Statements (Count 5)**

Pursuant to the New York Wage Theft Protection Act ("WTPA"), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;" "the regular pay day designated by the employer;" and the employer's address and telephone number. N.Y. Lab. Law § 195(1)(a). The WTPA also requires employers to "provide employees with 'a statement with every payment of wages,' listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate

of pay, and the number of hours worked." *Perry*, 2022 WL 1018791, at *8 (quoting N.Y. Lab. Law § 195(3)).

"[A] technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM)(RML), 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) ("*Guthrie I*") (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)), *R. & R. adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023) ("*Guthrie II*"), *aff'd*, 113 F.4th 300, 310–11 (2d Cir. 2024) ("*Guthrie III*"). "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). To plausibly allege a WTPA violation, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm[,]" *Guthrie III*, 113 F.4th at 308, and "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Id.* at 307 (quoting *TransUnion*, 594 U.S. at 442, which in turn quotes *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). In other words, "the plaintiff-employee must support a plausible 'theory as to *how* he was injured by [the] defendants' failure to provide the required documents.'" *Tzilin*, 2024 WL 4309775, at *11 (quoting *Guthrie III*, 113 F.4th at 309).

"In the wake of *Guthrie* [*III*], [c]ourts in this Circuit are in agreement that a plaintiff has standing if they plausibly allege that, by failing to provide the required wage statements, the employer was able to hide its violations of wage and hour laws and thus prevent the

employee from determining and seeking payment for the precise amount of his unpaid wages." *Cruz v. PJR Drywall Constr. Inc.*, No. 24-CV-8567 (RPK)(MMH), 2026 WL 663716, at *12 (E.D.N.Y. Mar. 9, 2026) (citing *Zambrano v. Envios Espinoza, Inc.*, No. 22-CV-3031 (OEM)(SIL), 2025 WL 1808694, at *12 (E.D.N.Y. July 1, 2025)), *R. & R. adopted by* Order Adopting R. &. R., *Cruz v. PJR Drywall Constr. Inc.*, No. 24-CV-8567 (RPK)(MMH) (E.D.N.Y. Mar. 25, 2026). The allegations of the Amended Complaint establish that Defendants' failure to provide hiring notices and wage statements to Plaintiff caused her a tangible injury. Plaintiff alleges that Defendants failed to provide her with paystubs, wage statements, and written notice providing information required by the WTPA and to post a notice explaining the minimum wage and overtime pay rights provided by the FLSA or New York Labor Law (Am. Compl., ECF No. 19 ¶¶ 34–37), "causing financial harm to Plaintiff by preventing her from being aware of, informed of and from receiving her lawfully owed compensation[,]" (*id.* at 13–14 ¶¶ 51–52). Plaintiff sufficiently establishes Article III standing when she alleges that the denial of the statutory right to wage notices and wage statements ultimately resulted in underpayment. *See Guthrie III*, 113 F.4th at 309–10 (citing *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022)) ("a plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has . . . a concrete interest" sufficient to establish standing); *see also, e.g.*, *Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040 (NRM)(MMH), 2025 WL 2731755, at *8 (E.D.N.Y. Sep. 25, 2025) (plaintiff alleged that failure to provide him with proper wage notices injured him by causing "lack of knowledge about the rates of pay he was receiving and/or should have [been] receiving for his regular hours and overtime hours, terms, and conditions of his pay, and . . . an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the

FLSA and NYLL—which he was not"), *R. & R. adopted by* Order Adopting R. & R., *Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040 (NRM)(MMH) (E.D.N.Y. Oct. 10, 2025).

The Court thus respectfully recommends that Defendants should be liable for violations of the NYLL's wage notice and wage statement provisions.

## VII. DAMAGES

### A. Burden of Proof

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)) (cleaned up). "On a motion for default judgment, a plaintiff has the burden to prove damages to the Court with a 'reasonable certainty.'" *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB), 2021 WL 7906551, at *8 (E.D.N.Y. Aug. 24, 2021) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)), *R. & R. adopted by* Order Adopting R. & R., *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB) (E.D.N.Y. Sep. 16, 2021).

However, because the employee bears the burden to properly record a plaintiff's work hours, that plaintiff is not required to compute FLSA damages precisely. *Chacha v. Nueva Era Flower Corp.*, No. 23-CV-3367 (AMD)(MMH), 2025 WL 2609246, at *13 (E.D.N.Y. Sep. 8, 2025) (cleaned up), *R. & R. adopted by* 2025 WL 2775917 (E.D.N.Y. Sep. 30, 2025). "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Brito*, 2022 WL 875099, at *15; *see also Amador v. 109-19 Food Corp.*, No. 21-CV-4633 (EK)(VMS), 2025 WL 1032031, at *27 (E.D.N.Y. Mar. 14, 2025) ("In order to determine

damages, the court may presume the accuracy of plaintiffs' recollection and estimates of hours worked set forth in their affidavits and damages calculations.") (cleaned up), *R. & R. adopted by* 2025 WL 1031133 (E.D.N.Y. Apr. 7, 2025).

A plaintiff who establishes claims under the FLSA and NYLL may not recover damages under both the FLSA and the NYLL for wages earned during the same period. *Rosas v. M & M LA Solucion Flat Fixed Inc.*, No. 23-CV-1212 (DG)(MMH), 2024 WL 4131905, at *13 (E.D.N.Y. Sept. 10, 2024), *R. & R. adopted by* Order Adopting R. & R., *Rosas v. M & M LA Solucion Flat Fixed Inc.*, No. 23-CV-1212 (DG)(MMH) (E.D.N.Y. Sep. 30, 2024). Rather, "if a plaintiff is entitled to damages under both federal and state wage law, the court has discretion to award that plaintiff damages under the statute providing the greatest amount of relief." *Reyes v. Bellerose Halal Meat Inc.*, No. 21-CV-6413 (MKB), 2025 WL 2664258, at *10 (E.D.N.Y. Sep. 17, 2025) (cleaned up). Because the NYLL provides the same or greater recovery than the FLSA at all relevant times during Plaintiff's employment with Defendants, the Court will apply the NYLL for all damages calculations.

As described below, Plaintiff seeks unpaid minimum wages, unpaid overtime wages, liquidated damages, pre-judgment interest, statutory damages, and attorneys' fees and costs. (*See* Am. Compl., ECF No. 19 ¶ 55; Mem., ECF No. 31 at 13.) Plaintiff submits a damages chart based on the allegations set forth in the Amended Complaint, declarations of Plaintiff and Plaintiff's counsel, and a supplemental letter explaining the basis for the damages. (*See* ECF No. 30-6 (Damages Chart); Mem., ECF No. 31; Yannes Decl., ECF No. 30-5 ¶ 22; Supp.

Ltr., ECF No. 37.) Accordingly, the Court respectfully recommends that Plaintiff should be awarded damages as analyzed further below.[7]

**B. Minimum Wage**

The Court has already determined that Plaintiff is entitled to the minimum wage rates for small employers pursuant to the NYLL and its regulations. (*See* § VI.D.1, *supra*.) Specifically, for small employers in New York, the applicable minimum wage rates were (1) $15.00 per hour for all work performed on or after December 31, 2019 and (2) $16.00 per hour for all work performed on or after January 1, 2024. N.Y. Lab. Law § 652(1)(a)(ii); 12 N.Y.C.R.R. § 142-2.1(a)(1)(ii). To calculate the minimum wage damages, the Court calculates the difference between Plaintiff's regular rate of pay and the applicable minimum wage, multiplied by the number of regular rate hours worked per week, and multiplied by the number of weeks during the relevant period.

For example, from the period of July 23, 2023 to November 18, 2023, Plaintiff typically worked six days per week but twice monthly she worked seven days per week. (*See* Yannes Decl., ECF No. 30-5 ¶¶ 8–9.) For the weeks Plaintiff worked six days per week, Plaintiff was paid $650.00 per week. (*See* Yannes Decl., ECF No. 30-5 ¶ 14.) Therefore, Plaintiff's hourly wage rate during this time was $13.54 (*i.e.*, ($650.00 ÷ 48 hours)). Further, for those weeks when Plaintiff worked seven days per week, Plaintiff was paid $700.00 per week. (*See id.*) Therefore, Plaintiff's hourly wage rate during this time was $12.50 (*i.e.*, ($700.00 ÷ 56 hours)).

[7] To the extent that the Court's calculations differ from Plaintiff's due to rounding or other discrepancies, the Court's calculations will govern. And as noted, Plaintiff does not request damages for unpaid spread of hours pay. (*See generally* Mem., ECF No. 31 & Supp. Ltr., ECF No. 37.)

Using the formula described above, Plaintiff is entitled to the unpaid minimum wages set forth in Table 1:

*Table 1: Unpaid Minimum Wages*

| Pay Period | Regular Pay Rate | Weekly Pay | NY Minimum Wage | Reg. Rate Hours Worked | Diff. between MW & Reg. Pay Rate | Total Hours Worked Per Week | # Weeks[8] | Total Unpaid Minimum Wage |
|---|---|---|---|---|---|---|---|---|
| 07/23/23 – 11/18/23 (7 Days) | $12.50 | $700.00 | $15.00 | 40 | $2.50 | 56 | 9 | $900.00 |
| 07/23/23 – 11/18/23 (6 Days) | $13.54 | $650.00 | $15.00 | 40 | $1.46 | 48 | 8 | $467.20 |
| 11/19/23 – 12/30/23 | $7.50 | $150.00 | $15.00 | 20 | $7.50 | 20 | 6 | $900.00 |
| 12/31/23 – 02/15/24 | $7.50 | $150.00 | $16.00 | 20 | $8.50 | 20 | 6.71 | $1,140.70 |
| 02/22/24 – 08/01/24 | $11.67 | $700.00 | $16.00 | 40 | $4.33 | 60 | 23.14 | $4,007.85 |
| 08/02/24 – 09/14/24 | $13.75 | $550.00 | $16.00 | 40 | $2.25 | 40 | 6.14 | $552.60 |
| | | | | | | | **Total** | **$7,968.35** |

While Plaintiff uses the correct formula to calculate minimum wage damages (*see* Supp. Ltr., ECF No. 37 at 1–2), the Court finds errors in the calculations. These errors are mainly attributable to rounding, and the difference between Plaintiff's calculations and the Court's are minimal. However, for the periods of employment where Plaintiff worked only 20 hours, Plaintiff improperly multiplied the difference in regular wage rate and the minimum wage rate by 40 hours. This incorrectly resulted in double the calculated damages for these

[8] "Weeks" refers to the number of weeks during the corresponding dates of employment.

periods, which has been adjusted accordingly. (*See id*. (using the same formula with 40 hours as the multiplying factor for all pay periods); ECF No. 31-6 (Damages Chart) (calculating that Plaintiff is owed $1,800.00 and $2,282.86, respectively, for the two periods between November 19, 2023 and February 15, 2024).)

Therefore, the Court respectfully recommends that Plaintiff should be awarded $**7,968.35** for unpaid minimum wages.

### C. Overtime Wages

As noted, under the FLSA and NYLL, Plaintiff is entitled to overtime compensation of at least one and one-half times his regular hourly rate for hours worked over 40 per week. *Dejesus*, 726 F.3d at 88; 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. "Where a plaintiff is 'compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate.'" *Brito*, 2022 WL 875099, at *16 (quoting *Guardado v. 13 Wall St., Inc.*, No. 15-CV-2482 (DRH)(SIL), 2016 WL 7480358, at *10 (E.D.N.Y. Dec. 2, 2016), *R. & R. adopted by* 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016)). When a plaintiff is paid above the minimum wage, however, the "overtime compensation should be determined by multiplying [the] agreed upon wage rate by one and one-half." *Marvici v. Roche Facilities Maint. LLC*, No. 21-CV-4259 (AS)(JLC), 2023 WL 5810500, at *7 (S.D.N.Y. Sep. 8, 2023), *R. & R. adopted by* 2023 WL 6648902 (S.D.N.Y. Oct. 12, 2023).

Plaintiff is entitled to one- and one-half times the applicable New York City minimum wage for all weekly hours worked over 40. Specifically, Defendants were required to pay Plaintiff the following overtime hourly rates: (a) $22.50 between July 23, 2023 through November 18, 2023 (*i.e.*, $15.00 x 1.5); and (b) $24.00 on or after January 1, 2024 (*i.e.*, $16.00

x 1.5). "Because Plaintiff has already been paid a weekly amount for these hours, the overtime wage deficiency is calculated by multiplying the difference between the paid rate and the overtime wage rate . . . by the total number of overtime hours worked" per week and multiplied by the number of weeks during the relevant period. *Sanchez*, 643 F. Supp. 3d at 377.

Plaintiff regularly worked between 40 and 60 hours per week, of which any time over 40 hours should have been paid at the overtime rate. For example, between July 23, 2023 and November 18, 2023, when Plaintiff worked 6 days per week for 56 hours per week, she was paid at a regular hourly rate of $12.50 for all hours worked but should have been paid $22.50 for the 16 overtime hours. The Court thus calculates her unpaid overtime for this period as $1,440.00 (*i.e.*, (($22.50 – $12.50) x 16 overtime hours x 9 weeks)). The Court finds that Plaintiff's calculations are generally accurate. (*See* ECF No. 31-6 (Damages Chart).) As such, applying the formula described herein, Plaintiff is entitled to total unpaid overtime wages listed in Table 2:

*Table 2: Unpaid Overtime Wages*

| Pay Period | Regular Pay Rate | NY Minimum Wage | NYLL OT Rate | Diff. between OT & Reg. Pay Rate | OT Rate Hours Worked Per Week | Total Hours Worked Per Week | # Weeks | Total Underpaid OT Wage |
|---|---|---|---|---|---|---|---|---|
| 07/23/23 – 11/18/23 (7 Days) | $12.50 | $15.00 | $22.50 | $10.00 | 16 | 56 | 9 | $1,440.00 |
| 07/23/23 – 11/18/23 (6 Days) | $13.54 | $15.00 | $22.50 | $8.96 | 8 | 48 | 8 | $573.44 |
| 02/22/24 – 08/01/24 | $11.67 | $16.00 | $24.00 | $12.33 | 20 | 60 | 23.14 | $5,706.32 |
| | **Total** | | | | | | | **$7,719.76** |

Therefore, the Court respectfully recommends that Plaintiff should be awarded $**7,719.76** for unpaid overtime wages.

**D. Statutory Damages**

Plaintiff seeks $5,000 for Defendants' failure to provide annual wage notices pursuant to NYLL § 195(1) and $5,000 for their failure to provide wage statements pursuant to NYLL § 195(3). (Mem., ECF No. 31 at 9.)

The penalty for failing to provide a wage notice is $50 per day, up to $5,000 (*i.e.*, 100 days or more), and the penalty for failing to provide wage statements is $250 per day, up to $5,000 (*i.e.*, 20 days or more). *Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22-CV-6136 (RPK)(RML), 2023 WL 5152336, at *6 (E.D.N.Y. July 18, 2023) (citing N.Y. Lab. Law §§ 198(1-b) & 198(1-d)), *R. & R. adopted by* 2023 WL 9104384 (E.D.N.Y. Aug. 23, 2023). Plaintiff alleges that she worked over 100 days without receiving wage notices and more than 20 days without receiving wage statements. (*See* Yannes Decl., ECF No. 30-5 ¶¶ 17–21.) Plaintiff is thus entitled to the maximum statutory damages of $5,000 for violations of NYLL § 195(1), and $5,000 for violations of NYLL § 195(3).

Therefore, the Court respectfully recommends that Plaintiff should be awarded **$10,000.00** for Defendants' violations of NYLL §§ 195(1) and 195(3).

**E. Liquidated Damages**

Under both the FLSA and NYLL, an employee may recover liquidated damages equal to the amount of their unpaid wages, unless the employer proves a good faith basis for believing that its underpayment of wages complied with the law. *Perry*, 2022 WL 1018791, at *11 (citing 29 U.S.C. §§ 216(b), 260 & N.Y. Lab. Law § 198(1-a)). However, the Second Circuit "interpret[s] the NYLL and FLSA as not allowing duplicative liquidated damages for

the same course of conduct. Double recovery is generally disfavored." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). A court may award damages under whichever statute allows for greater recovery. *See id*. "Liquidated damages are not available for damages under the WTPA." *Lata v. Live Constr. Corp.*, No. 24-CV-5981 (RER)(CLP), 2025 WL 2782336, at *13 n.10 (E.D.N.Y. Sep. 18, 2025) (citing *Ge Chun Wen v. Hair Party 24 Hours Inc.*, No. 15-CV-10186 (ER)(DF), 2021 WL 3375615, at *11 (S.D.N.Y. May 17, 2021), *R. & R. adopted sub nom. Wen v. Hair Party 24 Hours Inc.*, 2021 WL 2767152 (S.D.N.Y. July 2, 2021)), *R. & R. adopted by* 2025 WL 2782495 (E.D.N.Y. Sep. 30, 2025).

Here, where Defendants have defaulted and therefore make no showing that they acted in good faith when they underpaid Plaintiff, the greater liquidated damages available under the NYLL are appropriate. Accordingly, based on the Court's calculations herein, the Court respectfully recommends that Plaintiff should be awarded **$15,688.11** in liquidated damages under the NYLL, including $7,968.35 in unpaid minimum wages and $7,719.76 in unpaid overtime wages.

**F. Pre-Judgment Interest**

The FLSA does not allow for any pre-judgment interest where plaintiffs also receive liquidated damages. *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 n.7 (2d Cir. 2011) (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988)). "However, the Second Circuit has held that, as liquidated damages and pre-judgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL." *Collado v. JS Food & Grocery Corp.*, No. 23-CV-6617 (LDH)(CLP), 2025 WL 959096, at *11 (E.D.N.Y. Feb. 6, 2025) (citing *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)), *R. & R. adopted by* Order Adopting R. & R., *Collado v. JS Food &*

*Grocery Corp.*, No. 23-CV-6617 (LDH)(CLP) (E.D.N.Y. Mar. 31, 2025). Accordingly, Plaintiff is eligible to recover pre-judgment interest on compensatory damages for unpaid wages available under the NYLL at 9% per year, but not on liquidated damages. *Melo v. Milagro Grocery Corp.*, 750 F. Supp. 3d 38, 60 n.7 (E.D.N.Y. 2024) (citing N.Y. C.P.L.R. § 5004).

When damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts applying N.Y. C.P.L.R. § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Fermin*, 93 F. Supp. 3d at 49 (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)). Courts generally calculate pre-judgment interest in NYLL "from the midpoint date of the claims through the date judgment is entered" as well as from "the midpoint between the first and last dates of the plaintiff's NYLL claims." *See, e.g.*, *Rosas*, 2024 WL 4131905, at *17.

As discussed, the Court recommends that liquidated damages should be awarded under the NYLL, and thus, pre-judgment interest may be awarded. (*See* § VII.E., *supra*.) The Court calculates pre-judgment interest by determining the midpoint of the relevant period. The Court selects February 17, 2024 as the midpoint between the earliest date for which Plaintiff can recover for unpaid wages (July 23, 2023) and Plaintiff's end date of employment (September 14, 2024), as a reasonable intermediate date. Applying a nine percent per year rate, the Court

respectfully recommends that Plaintiff should be awarded **$3,502.35** in pre-judgment interest to increase at a rate of **$3.87** per day.[9]

**G. Post-Judgment Interest**

"[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961 and quoting *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996)). Accordingly, the Court recommends that Plaintiff should be granted post-judgment interest calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

**H. Attorneys' Fees**

Plaintiff seeks attorneys' fees of $6,950.00 based on 16.8 hours of work by attorneys Andrew Beresin and Michael Samuel. (Samuel Aff., ECF No. 30 ¶¶ 25–26.)[10]

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions." *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020) (citing 29 U.S.C. § 216(b) & N.Y. Lab. Law §§ 198(1-a), 663), *R. & R. adopted by* 2020 WL 2769266 (E.D.N.Y. May 28, 2020). "[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively

---

[9] The Court calculates the daily prejudgment interest rate by multiplying the total amount of unpaid wages for Plaintiff ($15,688.11) by 9%, then dividing by 365, for a daily rate of $3.87. The daily rate is then multiplied by 905, the number of days between February 17, 2024 and August 10, 2026, the date of this Report & Recommendation.

[10] Plaintiff's attorney time records format the time billed as "hh:mm," *e.g.*, the notation "16:48" refers to 16 hours and 48 minutes (16.8 hours) of total time billed. (*See* Samuel Aff., ECF No. 30 ¶ 26.)

reasonable fee.'" *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). "The method for determining reasonable attorneys' fees in this Circuit is based on several factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation, and ability of the attorney, and awards in similar cases." *Treyger v. First Class Furniture & Rugs Inc.*, No. 21-CV-2902 (EK)(RLM), 2022 WL 543026, at *7 (E.D.N.Y. Jan. 10, 2022) (citing *Arbor Hill*, 522 F.3d at 186 n.3, 190), *R. & R. adopted by* 2022 WL 541795 (E.D.N.Y. Feb. 23, 2022). "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request." *Perry*, 2022 WL 1018791, at *14. As discussed below, a reduced award of attorneys' fees is appropriate.

**1. Hourly Rate**

Courts must determine if the requested hourly rate is "what a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184. "In what has become known as the 'forum rule,' courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits." *Abularach v. High Wing Aviation LLC*, No. 22-CV-1266 (MKB), 2025 WL 405986, at *6 (E.D.N.Y. Feb. 5, 2025) (citing *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023)). "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Ochoa v. 5 Square Mgmt. LLC*, No. 24-CV-7300 (RPK)(MMH), 2026 WL 796866, at *13 (E.D.N.Y. Mar. 23, 2026) (quoting *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 299 (E.D.N.Y. 2024), which in

turn quotes *Esquivel*, 2023 WL 6338666, at *17), *R. & R. adopted by* Order Adopting R. & R., *Ochoa v. 5 Square Mgmt. LLC*, No. 24-CV-7300 (RPK)(MMH) (E.D.N.Y. June 4, 2026); *but see Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 241–43 (E.D.N.Y. 2025) (noting the considerable inflation that has occurred in recent years and the Court's obligation to award attorneys' fees commensurate with current market conditions).

Plaintiff requests hourly rates of $400.00 for attorney Andrew Beresin and $500.00 for attorney Michael Samuel. (Samuel Aff., ECF No. 30 ¶ 25.) Mr. Beresin has been admitted to practice in the State of New York since 1992 and has litigated over 75 FLSA cases in the past six years. (*Id.*) Mr. Samuel has been admitted to practice in the State of New York since 1993 and has litigated over 250 FLSA cases in the state. (*Id.*) Counsel provided no additional background information in support of the request for fees.

The Court finds that the requested hourly rates for both attorneys are unreasonable. *First*, the rate of $500.00 is not consistent with what a reasonable client would pay or what courts in the Eastern District of New York would award comparable legal services. *See, e.g.*, *Yanes v. Juan & Jon Inc.*, No. 19-CV-201 (JS)(LGD), 2024 WL 1639932, at *2 (E.D.N.Y. Apr. 16, 2024) (reducing requested hourly rate for Mr. Samuel from $500 to $450.00 as "excessive"); *Pich v. Queens Garden Nursery Inc.*, No. 22-CV-3362 (MKB)(MMH), 2024 WL 687234, at *14 (E.D.N.Y. Feb. 20, 2024) (reducing hourly rate of Mr. Samuel and Mr. Beresin due to error-filled filings), *R. & R. adopted by* 2024 WL 967636 (E.D.N.Y. Mar. 6, 2024). *Second*, a rate reduction is warranted in this case in which counsel: (1) submitted a default judgment motion that was seriously questioned by the Court and then withdrawn because of procedural errors; (2) amended the Complaint after several months because counsel named the wrong defendant; and (3) submitted the instant default motion in which the Court

needed supplemental information and also recommends partial denial based on incorrect damages calculations and abandoned claims. *See Pich*, 2024 WL 687234, at *14 (reducing fees because "'[n]otwithstanding the fact that this case should be relatively straightforward,' Plaintiff's first motion for default judgment was withdrawn because of its facial noncompliance with the Local Civil Rules and the instant motion papers 'are littered with typos and inconsistencies.'") (quoting *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 7684775, at *8 (E.D.N.Y. Oct. 12, 2023), *R. & R. adopted by* 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023)). Thus the Court respectfully recommends that Mr. Samuel's hourly rate should be reduced to $450.00 and that Mr. Beresin's should be reduced to $350.00.

**2. Hours Expended**

"For purposes of determining a reasonable fee, the number of hours billed must also be reasonable[.]" *Abreu v. Congregation Yetev Lev D'Satmar Meats & Poultry, Inc.*, No. 17-CV-272 (KAM)(LB), 2019 WL 2526087, at *5 (E.D.N.Y. June 19, 2019). "The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary." *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 211 (E.D.N.Y. 2019). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours." *Id.* (cleaned up).

Consistent with the recommended hourly rate reduction, the Court also finds that the number of hours expended in this case are unreasonable. According to the billing records, Mr.

Beresin expended a total of 14.5 hours and Mr. Samuel spent a total of 2.3 hours. (*See* Samuel Aff., ECF No. 30 ¶ 26.) However, more than half of Mr. Beresin's time is attributed to drafting the Complaint, amending the Complaint, and drafting the second motion for default judgment to correct errors in the Complaint and first default judgment motion. (*See id.*) Similarly, Mr. Samuel time entries include 1.5 hours "filing . . . a complaint and supporting documents" and preparing a request for entry of default, but those documents did not even name the correct individual defendant. (*See id.*) Where, as here, "the hours requested include time spent correcting the attorney's own mistakes," a reduction is warranted. *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH)(SJB), 2019 WL 8381264, at *16 (E.D.N.Y. Dec. 9, 2019). On these facts, a 20% reduction in hours is appropriate, and attorneys' fees should be based on 11.6 hours for Mr. Beresin and 1.8 hours for Mr. Samuel.

Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$4,870.00** in attorneys' fees.[11]

**I. Costs**

Plaintiff seeks $745.50 in costs, including filing and service of process fees. (*See* Samuel Aff., ECF No. 30 ¶ 27.) Pursuant to both the FLSA and the NYLL, a prevailing plaintiff is entitled to an award of reasonable attorneys' fees and costs. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Avedana*, 2021 WL 4255361, at *16. Plaintiff is entitled to all requested costs. *First*, the Court permissibly takes judicial notice of the docket notations for paid filing fees. *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *R. & R. adopted by* 2023 WL 2532006 (E.D.N.Y.

[11] The attorneys' fees are calculated as follows: ($350.00 x 11.6) + ($450.00 x 1.8) = $4,870.00

Mar. 14, 2023). Plaintiff is entitled to the $405.00 filing fee for this case because the docket reflects that she paid the fee. (ECF No. 1 Dkt. Entry.) *Second*, Plaintiff also submits invoices to support process server fees of $340.50. (ECF No. 30-7.)

Therefore, the Court respectfully recommends that Plaintiff should be awarded a total of **$745.50** in costs.

## VIII. CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion for default judgment at ECF No. 29, as supplemented by ECF No. 37, should be **granted in part** as follows: (1) the Clerk of Court should enter the proposed default judgment at ECF No. 31-1 (as amended)[12] against Defendants El Patron Minimarket Corp. and Carlos A. Vinanzaca, and (2) Plaintiff should be awarded damages in the amount of **$50,494.07**, which includes: (a) $**7,968.35** in unpaid minimum wages; (b) **$7,719.76** for unpaid overtime wages; (c) **$10,000** in statutory damages; (d) **$15,688.11** in liquidated damages; (e) **$3,502.35** in pre-judgment interest to increase by **$3.87** per day until entry of judgment; (f) **$4,870.00** in attorneys' fees; and (g) **$745.50** in costs.

A copy of this Report and Recommendation is being served on Plaintiff via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to El Patron Minimarket Corp. and Carlos A. Vinanzaca at 3205 Junction Boulevard, Flushing, New York 11369; and to Carlos A. Vinanzaca at 3205 Junction Boulevard, Apt. 1, Flushing, New York 11369.

[12] The amendments to the proposed judgment at ECF No. 31-1 are revising the damages to be consistent with this Report and Recommendation, if adopted, or the Court's order, if modified.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Merle. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025).

**SO ORDERED.**

Brooklyn, New York
August 10, 2026

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge